Mr. Anderson, good morning. I would like to proceed as soon as you can be ready. Preliminary question. You're representing the veteran here on a pro bono basis? Yes, sir. That's excellent and we appreciate the contribution you're making. Now, have you had occasion before filing your brief to interview your client? Yes, I've met with him several times and he's actually here in the courtroom today, Judge. Very well. And were you able to get a hold of the complete set of files from the Veterans Department relating to him for the whole span of years that he's had any I would hate to tell the court that I have a full, complete and accurate set of all the records over the years he's been involved in many different proceedings, as I think the record reflects. But I do have, I believe, everything that was available to us. There were some records that we saw that just weren't available. All right. I don't want to take any more of your time. I just wanted to sort of get oriented about the extent to which you've been able to conversations with him directly and reference to all files that were made available to you. Please proceed with your argument. Please, the court. Brian Anderson on behalf of the appellant AG. I would also like to mention I have before that the veteran in question is here with me today. He made the trip over from Pittsburgh with me yesterday and we would like to thank the court first off for continuing this case. It was originally set down in February and the veteran came down with an illness and the court continued it until today. So we certainly appreciate that. He presently resides back in Pittsburgh, not in Santa Cruz, California. Yes, sir. He's living currently in what is known as Monongahela, Pennsylvania, which is a suburb south of Pittsburgh. All right, go ahead. Sure, just briefly. AG, the Vietnam veteran, was dropped off in the middle of some very severe circumstances. We've read the briefs, including his personal recollection account, which is certainly dramatic, but isn't the problem whether he had any proof to support a claim to equitable tolling? Whether he had proof to support a claim to equitable tolling? Yes, you seem to argue that he should be entitled to equitable tolling so that the 1983 decision should be considered non-final because the NOD has never become due because he's been so disabled. And if there was a lot of proof that for the entire time frame he was, in fact, unable to function, for example, to communicate with counsel, then that would tend to support the claim to equitable tolling. But as I understand the record, there's very little evidence, and maybe none, presented to the Veterans Department that he was disabled from the time of the first filing until the time of the second filing, roughly 1983 to 93. Yes, your honor. I think the issue is he wasn't represented by counsel at the time of the initial 1983 filing for a claim for benefits. In fact, it was suggested that he do so by a counselor with the Vietnam Veterans Outreach Program. I understand that, but isn't it critical to your case that he have established that he was so disabled that he could not litigate using that word loosely his claims with the Veterans Department and that therefore he should be excused for a period of at least 10 years from not following up on the denial of his claim in 1983? I believe he did attempt to follow up in actually in 1985. So your view of equity, I'm unclear as I think the chief may be in terms of what is your claim of equitable tolling is it ought to be told for what period of time? I think what the VA's response to his, he issued an inquiry in 1985 saying I have a problem with the decision that was made in 1983 at the RO level. I don't understand it. I think I have a right to appeal. I want to challenge it. What's the status? How do I do that? And they said too late. It's too late. Right, so what is the period of time for which you're seeking equitable tolling? For the period of time, I believe April 11th, 1983 was the date the RO decision was entered and then the letter dated letter response from the VA is June 19th, 1985. So it's a period of about a year and two months from the initial denial, I believe, I'm sorry, from the initial from the initial one-year period running. So if that's the case, just back to Judge Michelle's point, which is what evidence did you put forward, even if we're just looking at a year and two months till 85, because he actually responded in 85, right? Yes, he did. What evidence did you put forward that he was incapacitated, unable to file in a timely way between 84 and 85? You're saying what evidence do we present? Yeah, I mean, well, you're asking, you're saying equitable tolling should have been applied. Yes, that's what we're thinking now. Well, do you agree that if you're going to get equitable tolling, you have to make some sort of showing with regard to your inability to have filed in a timely manner? Yes, I do. Okay, was there any showing made at any period of time? I believe it was impossible for him to make that showing on his own behalf in a per se manner at the time. So what are you asking us to do? You're saying equitable tolling should have applied. So how would you see this case working out if you were to prevail? Well, I think it sort of part of the argument here about some constructive notice issues that deal with some records involved with his treatment. Those records were never before the RO. Okay, well, that's the case that was adjudicated on the CUE already, on the Q claim, right? Yes, ma'am. Okay, but if you were to prevail, if we would just say, you're right, you get equitable tolling from 84 to 85, what happens to this case then? It's not over, right? So you get to then, your view would be, then you get to go back and re-adjudicate the 84 decision. Yes, I think we should. But hasn't that already been re-adjudicated by the Veterans Court, at least, you know, saying that there was no obligation to provide, to keep those records, or to provide them at the time? Why do you think the result would be any different, even if you get equitable tolling? I don't think it was proper for the Court of Appeals for to look behind. If they found that these records were not constructively before the RO at the time of the decision, then, you know, we respect that decision. But then why did the Court go on to say, well, even if those records had been before, I don't think, in my opinion, Judge Lance, at the CABC level, why does he say then that, you know, had these records been before the RO, it wouldn't have mattered? I mean, that's not for his determination, that's for the RO's determination. RO should look at those records and make that decision. Can we go back to Judge Crow's question about what would happen if we agreed with you that equitable tolling applied to excuse the late attempt to question the April 11, 1983 decision? All that would happen would be that he would now get to appeal that April 1983 decision to the Veterans Court, but meanwhile he's, Veterans Board, pardon me, but meanwhile he's litigated related claims at various levels. So what good would it do for him now to be able to challenge the April 11, 1983 decision now in 2008? How could that possibly help him? As we sit here today, Judge, in 2008, he's at a 100% disability rating. I think 70% disability, 30% unemployability, based on his post-traumatic stress disorder stemming from his Vietnam War service. I understand. And that's been adjudicated, as you mentioned, throughout the 90s. What he's seeking here is, I originally filed a claim based on no symptoms in 1983. I was seeking treatment from the Veterans Center at the time, and I should be entitled to those benefits from that initial date. But in his 1982 filing that led to the April 83 rejection by the RO, he had no diagnosis. So how could you possibly win now in a retroactive appeal in front of the Veterans Board when there's no diagnosis dating back to the 1982-83 time frame? Wouldn't the Veterans Board, if there were such a new appeal, be obligated to affirm the decision of the RO that in the absence of a diagnosis, there's no basis of a claim? Your Honor, I understand that there's no diagnosis in 1983, but we feel that had the RO, had the doctor who did the independent medical examination, consulted with the Vietnam Veterans Outreach Program and consulted the records... That's your second argument. I'm trying to take them one at a time here so I can follow what's going on. I'm trying to explore what good would it do him if somehow we were able to give him an appeal of April 83 decision next year in front of the Veterans Board. Isn't it clear he would lose there on such a nunk-pro-tunk appeal for the same reason he lost on the RO? There's absolutely no evidence that he was disabled. We argue that there is evidence there, Your Honor, but it wasn't considered. But that's already been adjudicated, right? I mean, whether they did it gratuitously, I mean, we've got a board decision that treated it in the context of a CUE and concludes that there was no obligation for them to consider the record. Am I wrong about that? All right, so we've already been... I mean, what makes you think you have to be thinking then for this to be a worthwhile endeavor that even if you won on equitable tolling, you'd be able to change the minds of the adjudicators when you take the same issue up to them a second time? And I don't see where you're getting that. I think it's the obligation of the regional office to consider these records and also think that... Let's take that part of it. Now, what is it in the records of his treatment in late 82 and the early month or month and a half of 83 in Pittsburgh with that special Vietnam veterans program that would help your case? There's no diagnosis in those records, is there? There's some numerical codes that exist in those records that relate to his treatment. The treating physician at the VBOB through this outreach program made notations. And whenever HE would come in for treatment or for counseling sessions, made numerical notations as to the type of treatment that was going on. We believe if we were able to put forth those records and they would actually be interpreted correctly using the codebook from that time period, which we've been unable to access... Is it known what those numerical designations indicate or is it not known? It's unknown. We've never been able to procure a copy. We've asked repeatedly. We've sought that we've been able to do that. There was a later determination... Then how are you able to maintain that if those records had been considered by the RO back in the early days of 1983, they would have ruled in his favor? There's a representation from the treating physician to the veteran during his treatment period at... During his counseling sessions. I think you have post-traumatic stress disorder. Is this Mr. McPeak? Mr. McPeak, yes. Is he a physician? He is a physician. I believe he's a psychiatrist or maybe a psychologist. I'd have to look back at the record to make sure. He's a licensed medical professional of some type. But he wasn't called as a witness. He didn't submit a report that the RO could do anything with. That's entirely correct, Your Honor. Unrepresented by counsel at that level, we never had an opportunity to do that. I certainly would have liked to call Mr. McPeak as a witness to see if he could shed some light on these records. Do you know how many sessions the veteran had with Dr. McPeak or psychologist McPeak, whichever he is? Off the top of my head, I do not. But I know it was over a series of weeks and maybe even months that he met continuously. Yeah, it was several months and it seemed like it was every week or two, as I recall. There would have been maybe 10 visits or something roughly of that sort. Are there any notes, narrative notes of any of those sessions? I'm not aware of any. All we were able to procure were these contact sheets. And in fact, the veteran had to procure those himself. Is Dr. McPeak still around? Is he alive? To my understanding, he still runs, in some capacity, an outreach center in Pittsburgh. Have you interviewed him? Do you have any idea what he would say if he were called now or what he would have said if he had been called then? I do not, Your Honor. I can't make that representation here today. Well, let's ask the government some questions and we'll give you some generous amount of rebuttal so that you're not handicapped by all the questions we've been asking and trying to excavate the mysteries of this case. Thank you for now. Thank you. Ms. Conrad, good morning. Good morning, Your Honor. How are you? Fine, thank you. Nice to have you back here. Can you help us out with this case? This is a very vexing case, just to try to understand what happened. I tried to write out a narrative starting when he got out of Vietnam and going forward, month by month, year by year, between then and now. And it's just totally bewildering to me what actually happened. I can try, Your Honor. Based on the documents in the record, what we know is that he filed a claim in 1982 for service connection for a psychiatric disorder, and that was denied in April of 1983. And then... Whoa, whoa, whoa. Now, that was denied based on the fact that a February exam by some VA psychiatrist was unable to diagnose definitively anything. Correct, Your Honor. And so that was the evidence in front of the RO when they denied on April 11th this claim. That's correct, Your Honor. Now, was Dr. McPeak called? It doesn't... In the record, there's no indication that... Dr. McPeak... The RO that did the April 83 adjudication is in Pittsburgh. Yes. And Dr. McPeak is also in Pittsburgh. Yes. At the same veterans facility. No. Here's the difference. I think you're confusing for a second the Vietnam Veterans Outreach Program was part of the Veterans Centers, which still exists today, but they treat veterans, of course, of all wartime veterans, and they're formally part of the Veterans Health Administration, but they're not related to the VA medical centers. They're separate. But so what? If I'm the adjudicating officer in the RO and I have a claim on my desk, don't I need to get the records from all the elements of the VA and put them on my desk, assemble the whole picture, and then make the best judgment I can make as to whether the disability is proven or not? Well, Vietnam Veterans Outreach Program records were confidential, and they're not provided to the VA medical center unless the veteran specifically requests them to be provided. I'm not talking about the medical center. I'm talking about the RO adjudicator. I'm saying wasn't it an obligation of that adjudicator before he adjudicated the claim to get the records from all the different elements of the VA? No, that was not a requirement in 1982. Well, why isn't it a common sense requirement whether it's written down somewhere or not? It was common practice of the VA before the Bell versus Derwinski decision in 1992 to look at the records that were before the adjudicator. There was no constructive knowledge requirement. Well, forget about technical language like constructive knowledge. Why isn't it the making judgments and adjudicating? Because the RO had no right to request the documents. The veteran had to provide those documents. Well, was he told that? I don't know from the records. I mean, if the excuse for why I, the adjudicator, didn't ask for the records is that I'm not allowed to ask for them, the veteran has to ask for them, then it seems like the obligation on the adjudicator would be to tell the veteran, I need those records, but I'm not allowed to get them under the rules. You have to go get them and then give them to me. Did that ever happen? In the record, it's not clear that that happened. There's no indication one way or the other in the record. But I think also it's important for the court to consider that even if those records were before the board in the RO in 1983, there's already been a factual finding by the Veterans Court that they did not show a diagnosis of post traumatic stress disorder.  I don't know if I'm qualified to- Well, what did these numbers mean? What did all these number codes mean? That's not in the record. You have no idea what they mean? No. Does the Veterans Administration not have some record of what those codes signify? They probably do, yes. Well, why didn't you obtain that? Well, because there's already been, that's not an issue that's before this court to review because there's already been a factual finding. Well, maybe that's for us to decide, not you. It's under the jurisdictional statute of section, I believe it's 329, 38 U.S.C. 3292. You can't review factual findings of the Veterans Court. We're quite aware of the limits of our jurisdiction. We don't need to be lectured about that. There's already been a factual finding that those do not show, and the codes. I believe the Veterans Court decision specifically even addresses the codes. Yeah, but can I move on a little, but just to follow up to that point? I think the government has a real problem with this case. And the problem I see, so tell me what I'm missing, but this case has been adjudicated as if the 85 decision was final. So whatever he filed in 93 was a new case, and that's why we're here. And the Veterans Court spent years adjudicating a CUE. It was a CUE issue because the predicate was 85 was final, and he never appealed that. The government, in its fact section of its brief, says at page three, the RO decision, blah, blah, and it became final. At page six of its brief, it says the June 85 RO decision became final. And then we get to the end of the government's brief in a separate section, and they say, wait a minute, we found out something here. And that's that there's a serious question as to whether that decision was ever final at all because it didn't comply with the requirements. Firstly, I want to ask you about, it seems to me, based on what you said, I don't know what the question is. I mean, does the government think there's a question? Well, then somebody has to adjudicate that question. Does the government not think it's completely relevant to everything that's happened here as to whether or not the government was wrong in its position years ago that the 85 decision was a final decision? Is that relevant? Isn't it dispositive almost? Because if it weren't final, then when he filed in 93, it was arguably a continuation. And so the whole question of whether or not he gets back benefits to 82, he may or may not be entitled to them. I don't know. Nobody's adjudicated that. But the adjudication would be entirely a different kind of issue, have nothing to do with CUE, have nothing to do with any of that. We've wasted 10 years of everybody's time and effort. If, in fact, what you disclosed at page 14 of your brief for the first time is correct and the 85 decision wasn't final. Well, actually, I need to clarify that. In page 14 of our brief, we're actually arguing in the alternative. It is our position that the 1985 decision is final and that even though he did not receive or at least as... Well, that's not what you say. On page 14 of the brief, it doesn't say in the alternative. It says the notice was also required. Top of the notice, page 15, and then say from the documents in the record, it appears no such notice. The notice that was required to be provided at 85 was provided. Accordingly, there may be some question whether the 85 decision constituted a finable, appealable, RO decision. That's not an alternative. We're talking about what the facts is. It's not an alternative argument. It's a question of like, you've been telling... You've been representing for 10 years. We've been all assuming it was a final decision. And now suddenly you say, there's a question as to whether or not it was final at all. Am I right? I mean, did the government when they wrote this, weren't you telling us there's a question? There's a real legitimate legal question as to whether or not it was final? Yes or no? No. So what does it mean to say there may be some question whether the 85 decision constituted? Because that is the only way that their equitable tolling argument can be raised. Because they're arguing... Well, you make the case, though. You say they didn't have the notice in the 85 decision. Is it the government's position that there was no requirement that they put in the notice that he has the right to appeal, that it's harmless error or whatever? It's procedural error. But as this court held in Cook v. Principe, procedural error does not vitiate the finality of VA decisions. That's not what you say in your brief, right? You say the notice was required to advise them from the documents that appears none. Accordingly, there may be some question. You don't say, but this doesn't matter because of what Cook said. You say, accordingly, there may be some question about whether it was final. Are you now changing your position and saying there's no question as to whether or not it was final based on Cook? Yes. To the extent that this part of the brief disagrees with Cook, then it's incorrect. Because Cook says procedural error does not vitiate the final decisions of the Veterans Administration. And it also says that procedural error is not basis for clear and unmistakable error. I'd like to explore with you a little bit of this label procedural error. I thought the statute required that the right to appeal be expressly set forth in decisions of the R.O. I'm sorry, it's a regulation, Your Honor. Not a statute. Right, the regulation. Yes, the 1984 regulation does say that final decisions affecting the payment of benefits must be accompanied of a notice of claimant's right to file an appeal by a notice of disagreement. And we agree, do we not, that no such notice was attached to the letter in question issued June 19, 1985. There's none in the record. But then you turn around and argue that he's waited 17 years and that what he's in effect trying to do is to challenge the June 1985 decision. But he never had any notice about the right to appeal the June 85 decision. So how can you complain that he didn't appeal it? He wasn't told he could appeal it. Because under the statutes and regulations, a decision on whether a notice of disagreement has been time to file is an appealable issue. I understand. You may know it's an appealable issue. The Veterans Department regs may say it's an appealable issue. But the requirement is that the veteran be told that it's an appealable issue and he has to be told that in the decision in question. Here there was a decision. It didn't have the right to appeal advice in it. So how can you then turn around and complain that he didn't appeal? You didn't tell him he could appeal. I mean, that's correct, Your Honor. But I would say that even if the 1985 decision was completely taken out of the picture, taken out of the record and taken out of this court's consideration, the 1983 decision is still a final decision of which there was no timely notice of disagreement filed. How do we know that? Does not affect the finality. How do we know that? Because there's already been factual findings by both the board and the Veterans Court. This is so circuitous. I mean, he he filed a notice of disagreement in 85. You just said it was too late. The way he that issue has not been adjudicated because he didn't appeal it. The government's position for 10 years has been we don't have to re-adjudicate that because he never filed an appeal to a final decision until the date of this appeal. By the time you got to the end of your brief, you acknowledged that there might be some dispute. If that was not a final decision, then he's not had the opportunity to adjudicate the question of whether or not there was equitable tolling or it was timely or he's made a showing under the regulations as to whether or not he had good cause. There's been no final adjudication of that issue, right? No, we would disagree because I think the board and this like I said, this case has been before the board and the Veterans Court for a number of years and they've looked at the entire record this whole this entire time. But have they ever been confronted? Has anybody ever said to them maybe the 85 decision wasn't final or you want to adjudicate whether or not it was really final? Has this question regarding the finality of the 85 decision ever in any way, shape, or form been adjudicated before any of the tribunals? The board and the Veterans Court have made factual findings that the 1985 decision was final. Your specific question is probably have they made specific factual findings on whether the lack of notice affects the finality of the decision? Yeah, the government has represented it's final all along. That's what you represented for the first 14 pages of this brief too. But has anybody ever adjudicated? No, whether the lack of notice affects the final decision. Has the government ever advised? This case was before the board, it was before the Court of Veterans Claims. Did the government ever advise those tribunals as it did finally advise us at the end of the game that there's at least some question with regard to finality? Not to my knowledge, Your Honor. Counsel, let me ask you some questions about the timing here. The original claim was filed in late 82 and denied by the R.O. in April of 83. That's correct. And it's now 2008. And we still seem to be struggling to get a final review of the rights of the veteran that perhaps trace back to that original claim. And when I tried to figure out how much time was spent at each level, it looked to me like his reopening claim filed in 93 was before the R.O. for three years. Is that right? Um, yes, Your Honor. I believe they made a final decision in March. How can that possibly be reasonable for a claim to sit unadjudicated in the R.O. for three years? I don't know the facts behind that, Your Honor. If it was, you know, why that time period occurred. And then... But they did award the effective date back to his... When they awarded service connection for his post-traumatic stress disorder, they did make it effective... Well, I'm just talking about the delay. I'm trying to figure out how could it possibly have taken the R.O. three years to adjudicate his reopening claim. And you don't know. I don't know the answer. Then he appealed to the board, right? In 96. Yes. And then in 2000, the board had a hearing at which he testified. No, I believe, Your Honor, actually there was a 1998 claim filed for an earlier effective date. Because... But he applied in 93. No, he applied for a service connection for post-traumatic stress disorder in 1993, which was granted in 1996. Okay, that's the one I'm talking about. Okay. Now, I understood that in 96, he appealed to the board from the board decision concerning his 1993 reopening claim, right? I believe that's in May 1998, a new claim for an earlier effective date for his service-connected PTSD. And that's what was before the board in 2000. Because the R.O. denied... The R.O. first denied his claim for an earlier effective date, and that was appealed to the board in 2000. Now you're really confusing me. It looked to me like he appealed in 96. Then you said, no, it was 98. Now you're saying, no, it was 2000. When was it? He submitted a new claim in 1998 for an earlier effective date. I'm talking at the board. I'm talking about at the board. Okay. He got a 1996 decision from the R.O. That's correct. And then later, he was in front of the board. But I believe that was from his 1998 claim, not from the 1996 decision from the R.O., if that makes sense. I can't tell if it makes sense or not. There was a 1996 decision from the R.O. granting his service connection from PTSD. Then in 1998, he submitted a claim for an earlier effective date for his PTSD, which was denied by the R.O. in October 1998. And then in April 2002, the board affirmed the R.O. decision. I thought he appealed the partial grant on the grounds that he was entitled to more than 30%. Yes, yes. He did. So then he was in front of the board as of the time of the R.O. decision, which was 1996. So he was in front of the board from 1996 for quite a long while before there was finally a board decision. Yes, Your Honor. Which got appealed to the Veterans Court. Okay. Right? Now, it looks to me like he was in front of the board from 1996 until 2002. That's about five years. I believe there were also other issues involved. If you look at the Veterans Court, there's multiple issues that were before the Veterans Court and the board that are not before this court. Like, for example, whether the Veterans Court, the VCAA notice was met. I'm just talking about his appeal. His appeal. That he filed in 96 from the 30% rating decision in 96 of the claim he filed in 93. And as far as I can tell, that appeal remained unadjudicated at the Veterans Court from 1996 to 2002, more than five years. And was finally adjudicated in 2002 and then appealed to the Veterans Court in 2002. That may be correct, Your Honor. And then in 2007, the Veterans Court finally finished with the case, making it look like the Veterans Court, like the board, also took five years to decide the case. It just seems incomprehensible to me how these two levels of adjudication could take approximately five years to decide this case. I believe there are additional issues. Like I mentioned before, there were issues about the RO issues, supplemental statement of the case in April 2001. I'm looking at the board's decision, which is attached to our brief. And then there are also, in November 2002, the veterans submitted the records from the, I'm sorry, in November 2000, the veterans submitted the records from the Veterans Center from 1982 and 1983. And then in December 2001, the RO issued a supplemental statement of the case regarding his Q claim. I don't believe his Q claim was raised until later, which could be part of the reason for why you see it go back and forth between the RO and the board. Can I just, can I ask a question? I get just two more questions. Sure. Unrelated. One goes back to the fact that if arguably the 85 decision was not final, then the question that we're all, the underlying question around here, which is how far you backdate the award of the claims. If the 85 appeal was not final, and then he refiled in 93, then arguably, at least the appropriate effective date could stretch all the way back to 1982, right? Because if the 85 decision was never final, then it could go, then the 93 would be a reopening or a revisiting of an ongoing proceeding. And then under that theory, now they haven't raised that, but am I wrong that if there was no finality in 85, that might ultimately, I mean, not that they'd be required to give him the entire back pay period, I guess there has to be adjudication of when he was entitled to the claim, but that would certainly affect everything that's been going on here for 10 years. Am I wrong about that? Yeah, that's correct. Okay. One other question, unrelated, sort of related. When the government goes on in its brief to argue on equitable tolling, which may or not even be an issue anymore in this case, but it was interesting to me that you say no equitable tolling because there's this reg. That's correct. That allows you, and okay, I understand your argument. How does the VA work? Did they tell someone, when somebody comes in and they say, you haven't met the timeframe in the MSPB, for instance, and when we do employee cases, if they come in and they're late, I think the MSPB sends them a notice, like you have an opportunity to show now if you have some valid excuse under the regulations. Does the Veterans Administration do that? Does somebody do that here? Like you point to this regulation that he had an opportunity to show good cause. Did anybody ever tell him that that's what he ought to be doing? Well, this regulation did not come into existence until 1990. But your argument was that he shouldn't be entitled to equitable tolling because he would have been entitled to the reg. And now you're telling me the reg wasn't even in effect at the time? Right. So how could that be an excuse for not allowing equitable tolling? Because the regulation has retroactive application. He could still, to this day, apply, submit an untimely notice of disagreement to the RO and have a statement of good cause about why it was untimely. He could still make use of that. Did anybody ever tell him that that's what he ought to be doing? I mean, you've been fighting with these guys over equitable tolling. Did anyone ever tell him, you don't need equitable tolling because if you can show us good cause, then we'll eliminate the time limit problem? I don't know the answer to that. I don't know if that's in the record. Ms. Conrad, have you read the veteran's files of what you are suggesting are related but separate cases? I'm sorry. What are you specifically referencing? Well, you've been telling me, for example, about something you say he filed in 98 with the board that was some sort of attempt to contest the effective date. Right. I thought you were suggesting that's a separate case. That's not this case. No, that is this case. The 1998, he submitted a claim for an earlier effective date for a service-connected post-traumatic stress disorder, and that was denied in October 1998. Then he added a claim for clear and unmistakable error in the 1983 RO decision. I'm sorry, the RO adjudicated the clear and unmistakable error. The question is, have you read the files in all these claims? I've read all the RO and board decisions. Have I read his specific claims? I don't recall. Have you read the McPeak notes? Yes, yes. Do you know what they mean? No, Your Honor, I do not. Then how can you tell us that they couldn't have helped them anyway? It was harmless error that they weren't before the adjudicator when you don't know what's in the records. Well, I have read them, but there's already been a factual finding from the board and the Veterans Court that those records do not show a definitive diagnosis of PTSD. How do they know? Because they have medical experts and advisors, and they're probably much more familiar. They probably have seen these records a fair amount or similar records. But you represent in your brief that these records, even if they had been considered by the RO back in 1983, couldn't have helped him because they don't have any gist to them. That's correct, Your Honor. But you don't know that. I don't personally know what they mean. But you're personally representing it in your brief. Because the Veterans Court and the board made factual findings that that is the situation, that those records are not dispositive of showing whether he had suffered from post-traumatic stress disorder. Well, forget about dispositive. Are they relevant? Are they relevant? Yeah. No, because they've already made factual findings that they do not show a definitive diagnosis of post-traumatic stress disorder. Therefore, he cannot show outcome-determinative error. But they made that decision under a CUE standard. That's correct. And if the appeal of the 19, if there was no notice of the right to appeal in the 1985 decision, as I understand your discussion with Judge Post, then this isn't a CUE issue. It's an issue that goes back to the validity of the original 1983 determination. Yes. And now, so the difficulty I have is, why don't we just remand that question? Wouldn't it seem obvious that once you decide that the 1988 decision is not final, because there was no notice of appeal, that the matter is necessarily reopened? Well, there's still, the 1983 decision is still final. No, no, because the 1985 decision was the one that gives it finality. We have no way of knowing the 1983 decision is final. He claims that he filed a nod in 84. And the 85 decision is the one that says, no, you didn't. But that's not final. But there's already been factual findings from the court and the board that said that the 1983 decision was final. That was based on not knowing that there was a dispute or an issue with regard to finality. They didn't adjudicate. They didn't say, Cook says it's only procedural, so we don't need to care. No one ever called to the attention that that was an issue. Well, and they did decide it, I think, under the Q standard, didn't they? They made a factual decision with regard to looking at it from a Q framework. They said, factually, these other records wouldn't have mattered. But they didn't look at it from their original obligation to make the determination. I don't think that matters. They looked at the records and they determined that based on the face of the records, they did not show a diagnosis of post-traumatic stress disorder. It doesn't matter how they were looking at it. They were looking at it on the face of a document. Okay, so now tell me why, if you go back to the 1983 R.O. adjudication, and you assume that these records are placed before that adjudicator, why is it that Judge Michelle's concern doesn't have fight? Because that's where we are, right? Where in 1983, we're assuming that those records would properly have been placed before the adjudicator. Now, why wouldn't they have had bite at that time? Because they do not show a definitive diagnosis of post-traumatic stress disorder. And he had no obligation, the adjudicator in 83, had no obligation to get on the phone and find out from Dr. McKeith Peek what they meant. Um, I think the R.O. would have found out. Yes, I mean, he would have interpreted the records and... Would have found out. Right. But I think that the documents on the board and the Veterans Court have already made factual findings that on the face, and they're not just basing this on, I think they're basing it on their knowledge of the records and that they do not show a diagnosis. Of post-traumatic stress disorder. Right, but in the paragraph where the appeals court makes that decision, they're quite clear that they're making it as a CUE review. That's right. And wouldn't this... Aren't we really in a different world in terms of making that evaluation? Now that you've admitted that the notice wasn't given of his right to appeal? No, I don't think so, because they're looking at... The Veterans Court, in my opinion, was looking at it as, okay, even if they were before the court, we're going to make a... We're going to look at them as if we were the R.O. and determine what they mean. And, oh, there's actually two, as my co-counsel points out. The 2001 rating decision of the Veterans Court said that the coding did not indicate a symptomology of a PTSD, post-traumatic stress disorder. So they actually looked at the codes in the 2001 regional office decision and this was responding to his CUE claim, I believe. Yes, his CUE claim in the 1982... For the 1983 decision. And they looked at all the codes and they state that the coding did not indicate a symptomatology of a post-traumatic stress disorder. Can you give us that slide? Sure. I don't believe it's in the joint appendix. Ms. Conrad, how can that be? If Dr. McPeak urged the veteran to file a claim because he was disabled, how could it be that the same person at the same time, Dr. McPeak, doesn't see symptoms of disabling conditions? It would make no sense for him to send the veteran to the RO to file a disablement claim if he, McPeak, didn't think the veteran was disabled. Actually, that's a factual issue, but I believe the Veterans Administration disputes that Mr. McPeak told AG to go to the RO and file a claim. There's a factual dispute about that. I mean, that's a factual issue. But do you disagree? I guess this is just on bottom page two of the court's opinion. They evaluated all of this stuff under a COE standard and they kept talking about what the standard is. And they're saying how this standard is different than the standard in normal cases. So under any theory, if they were incorrect in using the COE standard, then we don't know what they would have filed applying the lesser standard, do we? Let me look at the Veterans Court's decision. It's my opinion that they're looking at it as, even if these records were before the court, that they didn't find clear and unmistakable error because Bell versus Dwinsky doesn't require these records to be constructively before the court. But then they're like, even if we were looking at these records were constructively before, they would not have changed the outcome of the case. And then they look at these records, they note that they're contact sheets which do not appear to contain- Yeah, but they say in the midst of that, right in the middle of that, smack in the middle of that paragraph, they say when making a motion to revise the decision based on COE, it was the burden of the appellant to show how the outcome would have been manifestly different if the alleged error had not occurred. So isn't a fair reading of what they did that they evaluated all of this under a COE standard? Then read the next sentence. It says that because the appellant has failed to demonstrate that these documents prove that he had a competent diagnosis of PTSD, his COE claim must fail. Yes, it appears that they evaluated under a clear and unmistakable error standard. But they did note that they do not make a diagnosis of PTSD. I checked that our decision is not in the joint appendix. I'd be happy to provide it to the court. It's in the record at page 237. Okay, I just got to go back to one point and I'll try to be brief, but I must have misunderstood what you said. Going into the time, the regulation on extension of time limit, what you offer up is the obvious alternative to equitable tolling because it provides a seven. You told me in response to a question that this went into effect in 1990, but it was applied retroactively. Yes. So are you saying that in 1990 or even today, they could come in and file a new claim for an extension of time limit of a case that was in effect and happened, so they can still come in today? Yes, that's correct. So they don't need equitable tolling if that were the only thing that were left in this case, because they can come in today and say, even if the decision in 85 were final, they can come in today in 2008 and say, I want to go back to 1984, give me an extension. Yes. Okay, and if they do that, and they're granted the extension, they meet this test, then this whole thing blows up and there's a complete do-over, right? Because if we undo the 85 decision, this whole case goes a different way, might go a different way. Right, that's correct. It would be evaluated as his claim was filed in 1982. So if they go now and get a statement from Dr. McPeak as to what this history was, they can submit that and have it evaluated. Yes, and in the meantime, everybody spent 20 years adjudicating this case. I mean, there's got to be something missing here. Maybe the parties could agree and just do that. We can discuss that, yes. Thank you. Thank you, Mr. Anderson. You have a few minutes for rebuttal. Yes, thank you, Your Honor. Just a few quick points. I think the court has covered many of the questions that I had myself. Now, well, now that we've set the table for you, do you have a position, have you done any research as to whether or not the failure to provide him notice of his right to appeal is sufficient to undo the finality of that 85 decision? And they say Cook and procedure and blah, blah, blah. Have you had sufficient time and opportunity to review that as a matter of law, whether or not that would create? I have not considered that issue because I was always proceeding under the assumption that their view is 1985 decision was final. The Court of Appeals for Veterans Claims says we should challenge the 1985 decision if we had a problem with whether or not there was a timely notice of disagreement file and not the 1983 decision. That's been their position all along. And I have not considered that issue, whether the lack of notice would in fact reopen the claim. I would contend that it seems to me that it would. What about the regulation issue? Are you surprised that it appears that the government's position is you don't really need equitable tolling anymore because tomorrow you can come in and try to show good cause under the regulation, which I don't think is much more stringent than the requirements that you would have to show under equitable tolling. I'm not sure about that. Well, I don't know that the case of Barrett versus Principe case that we relied on for the equitable tolling argument certainly doesn't consider that regulation. And I don't have the hearing transcript, but I'm quite doubtful that the government would have argued that, well, you don't really need equitable tolling in the Barrett case because there's a reg that allows you to do that very thing. And to me, it's really elevating form of a substance here. I mean, they say that that reg codifies equitable tolling. Isn't it the same thing? Am I not here asking for equitable tolling? It's codified under the reg. And who's to say that the 1985 letter that he sent in does not demonstrate good cause? That's never been adjudicated. You might, in fact, be better off under the reg because traditionally under equitable tolling, the lodestone is diligence and it's your burden. And you're in a situation where, you know, whether you can meet that may be an open factual question. So you might be better off proceeding under the reg. Certainly, it would be a factual question. On the issue of whether Dr. Peek was ever consulted by the R.O. at the time, it's my understanding that he was not. It's also my understanding that the two offices, the VA Medical Center, which Council referenced, and the Vietnam Veterans Outreach Program, the offices for these two facilities were located on the same street in Pittsburgh, some five blocks apart. And this man was never consulted. It's our position that he should have been. Do you know anything about the notice of disagreement that the veteran alleges he filed in a timely fashion in February of 84? I can touch on that issue, Your Honor. It's something that prior, it was raised by a colleague of mine who's no longer with my firm, but I have a pretty good understanding of what the argument was there. The appellant says that he submitted a letter to the VA in 1984 that would have been a timely notice of disagreement, but they say in 1985, we had no record of that notice of disagreement. In fact, the letter he wrote in 1985 references the 1984 letter. It says, I submitted a letter in 1984. I never heard back from you. Can you please advise? I'm attaching a copy of my 1984 letter. Unfortunately, no one's been able to locate the attachment, but the original copy that we have of the letter that was sent to the VA in 1985 does have a staple mark in the corner. There's a Xerox copy of it, and it appears that there's a staple mark in the corner, but the attachment was not located. In the 85 letter, I believe he says that in February of 84, he had submitted a notice of disagreement through the Purple Heart organization. Do you know anything about that? Were they asked to do it on his behalf? Did he do it directly? What's the recollection here of your client? I'll submit to the court from my understanding of his recollection is that he had some dealings with the Purple Heart. He essentially told them, look, I'm done with the VA. I've had enough of this whole process with the government process. That's one of the symptoms of post-traumatic stress disorder is this reluctance to deal with authority. Just a hesitancy. And he says, I'm moving on. I'm going to California to try to start over and to find my place in the world. Nobody wants me here. And they said, look, we'll follow up on this. This is an important issue. We will follow up for you. They meaning the Purple Heart organization? Yes. And he was under the impression that that was submitted on his behalf. VA has no record of that. We could not find a copy of it. The only evidence we have is this mystery staple mark in the corner of the Xerox copy of the 1985 letter. But with that in mind, we wanted to raise the issue. And we did, in fact, at the lower court level. When did you first get into this case yourself or your firm? My firm has been involved since it was actually referred to us through the pro bono consortium. And David Schramm was the attorney that it was assigned to. And he took this under the guise of there may be a BCAA issue. That's what was presented to him by the pro bono consortium. Mr. Schramm has since left the firm. He's gone in-house to do patent work. I'm just looking for a rough time frame during which your firm has been representing the veteran on this pro bono basis. How many years? 2001, 2002. Maybe six years of our time has been spent representing AG in the process as a whole. Well, very well. We'll take the appeal under advisement. We thank both counsel for their efforts. Thank you.